# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### Case No. 1:23-CV-46

| | |
|---|---|
| **ALWINA FYKES, individually, on her own behalf and on behalf of all others similarly situated,**<br><br>Plaintiff,<br><br>v.<br><br>**HALLELUJAH ACRES, INC., a North Carolina corporation, and DOES 1 to 10,**<br><br>Defendants. | **COMPLAINT WITH DEMAND FOR JURY TRIAL** |

**NOW COMES** Plaintiff Alwina Fykes and makes this complaint against Defendants Hallelujah Acres, Inc. and Does 1 to 10 (collectively, "Defendants") to stop Defendants' practice of unsolicited telemarketing texts to telephone numbers listed on the national Do-No-Call Registry, which use false outgoing telephone numbers ("spoofed" telephone numbers), and to obtain redress for all persons injured by this conduct. Plaintiff, for her class action complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## NATURE OF CASE

1. Plaintiff, individually and as proposed class representative for all others similarly situated, brings this action against Defendants for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA") and under N.C.G.S. §§ 75-102, 75-105 for unsolicited, "spoofed" text messages made by or on behalf of Defendants which deceptively market Defendants' services.

2. Plaintiff, individually, and for class members, seeks an injunction and other equitable relief, and an award of statutory damages, to the members of the proposed classes.

3. Plaintiff, individually and as class representatives for all others similarly situated, bring this action against Defendants for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") and related violations under Article 5 of Chapter 75 of the North Carolina General Statutes for unsolicited text messages made by or on behalf of Defendants. Plaintiff, individually, and for class members, seek an injunction and an award of statutory damages to the members of the Classes under the TCPA, together with costs and reasonable attorneys' fees.

## PARTIES

4. Plaintiff Alwina Fykes ("Fykes") is a natural person and a resident of Texas.

5. Hallelujah Acres, Inc. ("Hallelujah Acres") is a limited liability company duly organized under the laws of the State of Delaware. It has identified its offices as 834 South Post Road, Shelby, North Carolina 28152 and/or 916 Cox Road, Gastonia, North Carolina 28054. Hallelujah Acres sells audio and video tapes, books, food supplements, juicers, water distillers and food dehydrators via Internet and mail order.

6. Plaintiff is currently ignorant of the true names and capacities, whether individual, corporate, associate, or otherwise, of the Defendants sued herein under the fictitious names Does 1 through 10, inclusive, and therefore, sues such Defendants by such fictitious names. Plaintiff will seek leave to amend this complaint to allege the true names and capacities of said fictitiously named Defendants when their true names and capacities have been ascertained. Plaintiff is informed and believe, and based thereon allege, that each of the fictitiously named Doe Defendants is legally responsible in some manner for the events and occurrences alleged herein, and for the damages suffered by Plaintiff.

7. Plaintiff is informed and believe and based thereon allege that all Defendants were at all

relevant times acting as actual agents, conspirators, ostensible agents, partners and/or joint venturers and employees of all other defendants, and that all acts alleged herein occurred within the course and scope of said agency, employment, partnership, and joint venture, conspiracy or enterprise, and with the express and/or implied permission, knowledge, consent, authorization and ratification of their co-defendants; however, each of these allegations are deemed "alternative" theories whenever not doing so would result in a contradiction with the other allegations.

8. All Defendants, including Hallelujah Acres and Does 1 through 10, are collectively referred to as "Defendants." Whenever this complaint refers to any act of Defendants or acts of Hallelujah Acres, the allegations shall be deemed to mean the act of those defendants named in the particular cause of action, and each of them, acting individually, jointly and severally, unless otherwise alleged.

## JURISDICTION AND VENUE

9. The Court has federal subject matter jurisdiction under 47 U.S.C. § 227. *Cf. Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368 (2012).

10. This Court has personal jurisdiction over Defendants under N.C.G.S. § 1-75.4(1) and (3) because Defendants are present within the state and because Plaintiff asserts injuries arising out of an act or omission within this state by Defendants.

11. Venue is also proper before this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## THE TELEPHONE CONSUMER PROTECTION ACT of 1991, 47 U.S.C. § 227

12. "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2343

(2020). In 1991, Congress enacted the TCPA, in response to a growing number of consumer complaints regarding certain telemarketing practices. Congress found that "automated and prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call," and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from the nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2 (10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227. *See also Mims*, 565 U.S. at 371 ("The Act bans certain practices invasive of privacy").

13. The TCPA (via its implementing FCC regulations) prohibit calls to any number that is registered with the National Do-Not-Call Registry. *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2). The TCPA provides a private right of action for damages and injunctive relief for such DNC violations. 47 U.S.C. § 227(c)(5).

14. "The DNC also protects consumers from unwanted text messages that contain marketing when the consumer has placed their number on the registry": DNC "requirements apply to voice calls and text messages." Federal Communications Commission, Targeting and Eliminating Unlawful Text Messages, FCC 22-72 ¶10 & nn.31, 34 (September 27, 2022), https://docs.fcc.gov/public/attachments/FCC-22-72A1.pdf (citing *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 2003 Report and Order*, 18 FCC Rcd. 14014, 14115-16 ¶¶165-66 (July 3, 2003)).

15. The FCC has noted "ever-changing and increasingly complex tactics to commit fraud against consumers over text messages," marked increase of complaints about text spam, increasing losses from text-facilitated fraud, and various ways in which text telemarketing is more effective than regular telemarketing: "Data indicates that consumers read nearly all texts they receive, and do so nearly immediately. Indeed, industry data suggests that consumers open a

far larger percentage of text messages than email and open such messages much more quickly." *Id*. ¶¶3-7.

16. The National Do-Not-Call Registry allows residential telephone subscribers to register their telephone numbers with the Registry to indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2). A listing of the Registry "must be honored indefinitely or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

17. The TCPA's legislative history recognized the continued proliferation of telemarketing, left unchecked, would overwhelm desired communications: noise would outweigh signal, and use of telephony would decline as it became increasingly unreliable. "Unwanted calls are tainting the wanted ones and make us cringe at the thought of answering the telephone at night. . . .[I]t's a classic case of the bad apples spoiling the whole barrel." 137 Cong. Rec. H11,312 (daily ed. Nov. 26, 1991) (statement of Rep. Cooper); 137 Cong. Rec. H11,310 (daily ed. Nov. 26, 1991) (statement of Rep. Markey) (TCPA intended to protect privacy "before our home telephones become the receptacles of junk calls in the same way that junk mail often inundates our mailboxes"). Unless the situation improves, Americans will permanently acclimate to the telephone call as a fundamentally untrustworthy medium for free speech and stop answering unidentified telephone calls, frustrating the legislative intent behind the TCPA.

## NORTH CAROLINA GENERAL STATUTES, § 75, ARTICLE 4

18. North Carolina has enacted statutory law expanding on the TCPA's prohibitions and remedies. Article 4 of N. C. Gen. Stat. § 75 prohibits making "a telephone solicitation to a telephone subscriber's telephone number if the telephone subscriber's telephone number appears in the latest edition of the 'Do Not Call' Registry." N.C. Gen. Stat. § 75-102(a). Article 5 also

authorizes a private right of action "to enjoin further violations of this Article by the telephone solicitor," and "to recover five hundred dollars ($500.00) for the first violation, one thousand dollars ($1,000) for the second violation, and five thousand dollars ($5,000) for the third and any other violation that occurs within two years of the first violation." N.C. Gen. Stat. § 75-105(b). Article 4 also authorizes court to award "a prevailing plaintiff reasonable attorneys' fees if the court finds the defendant willfully engaged in the act or practice . . ." N.C. Gen. Stat. § 75-105(d).

19. A telephone solicitation is defined as a "voice or text communication . . . for the purpose of soliciting or encouraging the purchase or rental of, or investment in, property, goods, or services [or] obtaining or providing information that will or may be used for that purpose." N.C. Gen. Stat. § 75-101(9). A telephone solicitor is any "individual, business establishment, business, or other legal entity doing business in this State that, directly or through salespersons or agents, makes or attempts to make telephone solicitations or causes telephone solicitations to be made." N.C. Gen. Stat. § 75-101(10). A telephone subscriber is an "individual who subscribes to a residential telephone service from a local exchange company . . . or a wireless telephone company; or the individuals living or residing with that individual." N.C. Gen. Stat. § 75-101(11).

## DEFENDANTS' TELEMARKETING ACTIVITIES

20. Defendants use telemarketing to solicit business from potential consumers across the country (including North Carolina and Texas) to purchase goods and services from Hallelujah Acres' website.

21. Defendants market Hallelujah Acres' goods and services through aggressive, illegal, outbound telemarketing text message campaigns. These text message campaigns are conducted for

Hallelujah Acres' benefit and on its behalf. Hallelujah Acres and its telemarketers send telemarketing texts to telephone numbers on the Do-Not-Call registry, which provide links that transfer the recipient to Hallelujah Acres' website.

22. Defendants systemically fail to honor the national Do Not Call List. Defendants do not have express consent to text telephone users whose telephone number is on the Do Not Call List.

23. Defendants use misleading text messages to prompt recipients to click on the links which transfer them to Hallelujah Acres' website, and disguise their relationship with Hallelujah Acres. Defendants use misleading or inaccurate caller identification information, including "spoofed" telephone numbers (that is, replacing the actual originating number displayed to recipients' caller ID systems—which could be used to reliably identify the vendors' calls— with a falsified ostensible outgoing telephone number).

24. Defendants' misleading text messages allow them to track and attribute texts to specific telemarketing campaigns, but make it difficult for consumers to do the same or even identify Defendants. Defendants' use of spoofing entices recipients to look at texts that they would otherwise block or ignore, and makes it difficult to attribute particular calls to Defendants. These practices allow Defendants to evade accountability for their telemarketing activities, and make it harder for text recipients to avoid or otherwise react to Defendants' texts.

25. Nonetheless, Defendants sent, and continue to send, these telemarketing calls to consumers without their consent. Defendants ratify the telemarketers' conduct by accepting payments from the consumers who make purchases from Hallelujah Acres' website, and by paying commission to these telemarketers, despite knowing that these purchases resulted from telemarketing that violated the TCPA. Defendants have knowingly and actively accepted money that originated through illegal telemarketing text messages, and/or paid and/or

approved payment of commissions to telemarketers for such text messages.

26. To the extent Defendants used any third-party telemarketers to send any text messages to, they were and are at all relevant times, acting as actual agents, ostensible agents, conspirators, partners and/or joint venturers and employees of Defendants, and the acts alleged herein occurred within the course and scope of said agency, employment, partnership, joint venture, conspiracy or enterprise, and with the express and/or implied permission, knowledge, consent, authorization and ratification of Defendants.

27. Defendants operate, manage, monitor, and/or control these text messaging campaigns through the data they collect about the campaigns, and the feedback Defendants give to the telemarketers (including, ultimately, the commissions Defendants pay to their telemarketers). Defendants are legally responsible for ensuring they and/or any third-party telemarketers complied with the TCPA, even if they themselves did not itself make the calls. Defendants are vicariously liable for their agents' TCPA violations. Defendants not only controlled the result of the work, but also the manner and means by which it was accomplished through interim instructions.

28. There is no material distinction between telemarketing calls made by Defendants and/or by telemarketers who are technically third parties. The FCC's regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397, ¶13 (1995). The FCC reiterated this principle in 2013, when it explained that "a seller . . . may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*,

28 FCC Rcd. 6574, 6574 (2013). *See also Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 168 (2016) ("no cause to question" precept that "under federal common-law principles of agency, there is vicarious liability for TCPA violations"); *Hodgin v. UTC Fire & Sec. Americas Corp.*, 885 F.3d 243, 251-52 (4th Cir. 2018) (citing Restatement (Third) of Agency § 4.01(1) (2006) to apply ratification to TCPA claims); *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 878 (9th Cir. 2014) (citing Restatement (Third) of Agency (2006) §§ 2.01, 2.03, 4.01 for proposition that vicarious liability under the TCPA "may be established by express authorization, implicit authorization, or ratification").

## PLAINTIFF ALWINA FYKES' INDIVIDUAL ALLEGATIONS

29. Fykes's telephone number has been registered with the National Do-Not-Call Registry for over ten years. Fykes uses her telephone number for residential purposes. Fykes never provided her telephone number to Defendants or their agents for any purpose whatsoever and she never had a business relationship with them. Defendants and their agents did not otherwise obtain Fykes's prior express consent to make telemarketing calls to her telephone number. Fykes was not a business associate, customer, or other person having an established relationship with Defendants, Defendants did not call to collect an existing obligation, and Fykes did not request Defendants to call (and, indeed, she was not aware of Defendants prior to these calls). Defendants never had valid consent to call Fykes. *See* 47 C.F.R. § 64.1200(c)(2)(ii) (requiring "a signed, written agreement between the consumer and seller which states that the consumer agrees to be contacted by this seller"). In the alternative to her allegations that Hallelujah Acres itself sent these text messages, Fykes alleges Doe 1 is technically a separate legal or natural person which sent the following telemarketing texts to her telephone.

30. On June 6, 2022, Fykes received a text message ostensibly from (218) 513-2164: "3/3

NOTICE: Your overpaid your phone bill by $520.54 last 12/mo. ClAIM-REFUND [sic]," together with a link that redirected to Hallelujah Acres' website.

31. On June 7, 2022, Fykes received a text message ostensibly from (475) 267-0354: "ALERT: (1) NEW CREDIT-ACCOUNT has LOWERED your SCORE by -31 PTS. RES0LVE N0w [sic]," together with a link that redirected to Hallelujah Acres' website.

32. On June 28, 2022, Fykes received a text message ostensibly from (701) 969-1266: "PYMENT-N0TICE [sic]; This might be YOUR last Chance to Claim your 459.32$ Unclaimed-Assts Pyment! Grab NOW," together with a link that redirected to Hallelujah Acres' website.

33. These text messages were for the purpose of encouraging the purchase of property, goods, or services from Hallelujah Acres' website, and constituted telephone solicitations under 47 CFR § 64.1200(f)(15).

34. These calls damaged and harmed Fykes. Fykes found these repeated unsolicited texts to be confusing, intrusive and harassing, as they diverted attention away from her daily activities. Fykes put her telephone numbers on the national Do-Not-Call registry specifically to avoid telemarketing. Nevertheless, Fykes only seeks statutory damages and does not seek actual damages.

## CLASS CERTIFICATION ALLEGATIONS

35. **NDNC Class:** Plaintiff brings this Complaint against Defendants, pursuant to Federal Rule of Civil Procedure 23, on behalf of herself and the following National Do-Not-Call ("NDNC") Class:

> All persons in the United States who received two or more telemarketing text messages to their cellular telephone numbers within any 12-month period by or on behalf of Defendants, from four years prior to the date of this complaint through the date the Court certifies the class, while such number was registered with the National Do-Not-Call Registry.

Excluded from the NDNC Class are any entities in which Defendants have a controlling interest or which has a controlling interest in Defendants, and Defendants' owners, affiliates, agents, legal representatives, predecessors, successors, assigns, and employees. Also excluded are the judge and staff to whom this case is assigned, and any member of the judge's immediate family. Plaintiff reserves the right to revise and amend these class definitions based on facts learned during discovery.

36. **IDNC Class:** Plaintiff brings this Complaint against Defendants, pursuant to Federal Rule of Civil Procedure 23, on behalf of herself and the following internal Do-Not-Call ("IDNC") Class:

> All persons in the United States who received two or more telemarketing text messages to their cellular telephone numbers within any 12-month period by or on behalf of Defendants, from four years prior to the date of this complaint through the date the Court certifies the class, during which time Defendants had not instituted or maintained the procedures or minimum standards required under 47 C.F.R. § 64.1200(d).

Excluded from the IDNC Class are any entities in which Defendants have a controlling interest or which has a controlling interest in Defendants, and Defendants' owners, affiliates, agents, legal representatives, predecessors, successors, assigns, and employees. Also excluded are the judge and staff to whom this case is assigned, and any member of the judge's immediate family. Plaintiff reserves the right to revise and amend these class definitions based on facts learned during discovery.

37. **State Law DNC Class:** Plaintiff brings this Complaint against Defendants, pursuant to Federal Rule of Civil Procedure 23, on behalf of herself and the following State Law DNC Class:

> All persons in the United States who received one or more telemarketing text messages to their cellular telephone numbers by or on behalf of Defendants, from four years prior to the date of this complaint through the date the Court certifies the class, while such number was registered with the National Do-Not-Call Registry.

Class Action Complaint 11

Excluded from the State Law DNC Class are any entities in which Defendants have a controlling interest or which has a controlling interest in Defendants, and Defendants' owners, affiliates, agents, legal representatives, predecessors, successors, assigns, and employees. Also excluded are the judge and staff to whom this case is assigned, and any member of the judge's immediate family. Plaintiff reserves the right to revise and amend these class definitions based on facts learned during discovery.

38. **Numerosity:** The exact number of members of each Class is unknown and is not available to Plaintiff at this time, but such information is readily ascertainable by Defendants and their agents' records. Each Class is so numerous that joinder of all members is impractical. Plaintiff alleges that there are at least forty members of each Class.

39. **Commonality:** Plaintiff and the members of each Class share common experiences receiving text messages by or on behalf of Defendants. They received multiple, incessant, uninvited texts to their residential telephone numbers for the purposes of marketing Defendants' products.

40. **Predominance:** In addition, common questions of fact and law exist as to all members of each Class and predominate over the questions affecting only individual members of the Classes. Identification of the individuals who qualify as a member of each Class will be sufficient to establish liability to the class member. The predominant common questions include:

(a) Whether Defendants and/or their agents sent telemarketing text messages to the residential telephone numbers of NDNC and/or State Law DNC Class members while those numbers were registered with the National Do-Not-Call Registry;

(b) Whether Defendants and/or their agents sent telemarketing text messages to the residential telephone numbers of IDNC Class and/or State Law DNC Class members while Defendants had failed to institute or maintain procedures and minimum standards required under 47 C.F.R. § 64.1200(d) and/or N.C.G.S. § 75-102(c) for sending telemarketing text messages;

(c) Whether Defendants are directly or vicariously liable for text messages by their telemarketers;

(d) Whether Defendants and/or their agents had legally effective consent to send telemarketing text messages to Class members;

(e) Whether Plaintiff and Class members are entitled to damages, including whether Defendants' violations were performed willfully or knowingly such that Plaintiff and NDNC and/or IDNC Class members are entitled to treble damages, and Plaintiff and State Law DNC Class members are entitled to attorneys' fees;

(f) Whether Plaintiff and Class members are entitled to injunctive relief.

41. **Typicality:** Plaintiff's claims are typical of the claims of the other Class members. Plaintiff is not different in any relevant way from any other Class members, and the relief she seeks is common to the Classes.

42. **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the other members of the Classes: Plaintiff's interests do not conflict with the interests of the other Class members. Plaintiff has retained counsel competent and experienced in complex class actions, including class actions arising under the TCPA and other consumer protection laws, and they intend to prosecute this action vigorously.

43. **Predominance and Superiority:** The Classes alleged in this Complaint are appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. The damages suffered by each individual Class member will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. It would be virtually impossible for Class members to individually obtain effective relief from Defendants' misconduct. Even if Class members themselves could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, class

actions present far fewer management difficulties and provide the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

44. **Generally Applicable Policies:** This class action is also appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to each class a whole. The policies of the Defendants challenged herein apply and affect members of each class uniformly, and Plaintiff's challenge of these policies hinges on Defendants' conduct, not on facts or law applicable only to Plaintiff.

45. **Injunctive Relief is Appropriate:** Based on information and belief, Defendants continue to engage in the improper practices discussed above. Injunctive relief is necessary and appropriate to enjoin Defendants' conduct and to prevent irreparable harm to Plaintiff and other Class members for which they have no adequate remedy at law.

### FIRST CLAIM FOR RELIEF
### Violation of 47 U.S.C. § 227(c)(5) Against All Defendants
### by Plaintiff, Individually and on Behalf of the NDNC Class

46. Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint. Plaintiff asserts this claim on behalf of herself and members of the NDNC Class.

47. Plaintiff incorporate by references the foregoing allegations as if fully set forth herein.

48. Defendants are "persons" as defined by 47 U.S.C. § 153(39).

49. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring an action for injunctive relief and statutory

damages of $500 per violation. 47 U.S.C. § 227(c)(5). Where "the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection," it "may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount [otherwise] available . . ." *Id.*

50. The FCC's TCPA regulation provides that "[n]o person or entity shall initiate any telephone solicitation" to a "residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2). This prohibition also applies to wireless telephone numbers. 47 C.F.R. § 64.1200(e).

51. On information and belief, Defendants and/or their agents routinely sent telemarketing text messages to residential cellular telephones in the regular course of their telemarketing campaigns alleged above. Defendants violated 47 C.F.R. § 64.1200(c) by initiating two or more telephone solicitations to cellular residential telephone subscribers, including Plaintiff and the other NDNC Class members. These text messages were for the purpose of encouraging the purchase of property, goods, or services from Hallelujah Acres' website, and constituted telephone solicitations under 47 CFR § 64.1200(f)(15). Defendants violated 47 C.F.R. § 64.1200(c).

52. Defendants' violations are willful because Defendants knew that they did not have consent or authority to send telemarketing text messages to Plaintiff and other NDNC Class members or other telephone numbers on the Do Not Call List, and Defendants nonetheless sent text messages to such telephone numbers. Because Defendants' violations were willful, Plaintiff seeks treble damages for herself and the other Class members.

53. Plaintiff Alwina Fykes, individually, and on behalf of the other members of the NDNC Class,

seeks to recover statutory damages (including treble damages for willful violations), as well as injunctive and equitable relief under 47 U.S.C. § 227(c)(5) against Defendants.

## SECOND CLAIM FOR RELIEF
### Violation of 47 U.S.C. § 227(c)(5) and/or 47 C.F.R. § 64.1200(d) Against Defendants By Plaintiff, Individually, and on Behalf of the IDNC Class

54. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein. Plaintiff asserts this claim on behalf of herself and members of the IDNC Class.

55. Again, the TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring an action for injunctive relief and statutory damages of $500 per violation, and may treble damages for willful or knowing violations. 47 U.S.C. § 227(c)(5).

56. The FCC's TCPA regulation provides that

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made [and] must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. . . .

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

47 C.F.R. § 64.1200(d). Again, this prohibition also applies to wireless telephone numbers. 47 C.F.R. § 64.1200(e).

57. Defendants and/or their agents violated 47 C.F.R. § 64.1200(d)(1) by sending telemarketing text messages while they did not have a written policy for maintaining a do-not-call list, and/or such policy was not available upon demand. Plaintiff requested Defendants' written policy for maintaining a do-not-call list on June 25, 2021, and Defendants never provided one. Defendants either do not have a written policy for maintaining a do-not-call list, or do not provide it on demand.

58. Defendants and/or their agents violated 47 C.F.R. § 64.1200(d)(3) by sending telemarketing text messages while they failed to honor consumer requests not to receive calls or text messages from or on behalf of Defendants, and/or did not record such requests. Plaintiff told Defendants not to call her again on August 10, 2022, and there is no evidence Defendants recorded such request on their internal do-not-call list. Defendants fail to honor consumer requests not to receive calls or text messages from or on behalf of Defendants.

59. On information and belief, and in addition or the alternative, Defendants and/or their agents violated 47 C.F.R. § 64.1200(d)(2) by sending telemarketing text messages while they had failed to train their personnel in the existence and use of their do-not-call list. Plaintiff alleges various violations of 47 C.F.R. § 64.1200(d) above. To the extent Defendants claim they instituted and maintained procedures and minimum standards prescribed by 47 C.F.R. §

64.1200(d), but that their personnel made a mistake implementing their do-not-call list, Defendants failed to adequately train their personnel.

60. Defendants and/or their agents violated 47 C.F.R. § 64.1200(d)(4) by making telephone calls for telemarketing purposes which concealed the name of the telemarketer, Defendants' names, and a telephone number at which Defendants could be contacted. Specifically, Defendants' spoofed the outgoing telephone numbers used to call IDNC Class members, and/or their telemarketers failed to identify Defendants.

61. The forgoing text messages were for the purpose of encouraging the purchase of property, goods, or services from Hallelujah Acres' website, and were for telemarketing purposes under 47 CFR § 64.1200(f)(13).

62. Defendants violated 47 C.F.R. § 64.1200(d) by initiating two or more messages to wireless residential telephone subscribers such as Plaintiff and the other IDNC Class members while failing to institute or maintain procedures and minimum standards required under 47 C.F.R. § 64.1200(d).

63. Defendants' violations are willful because Defendants knew that the TCPA applied to their conduct, and knew that they failed to institute or maintain procedures and minimum standards required under 47 C.F.R. § 64.1200(d) in the manner alleged above, but still engaged in telemarketing. Because Defendants' violations were willful, Plaintiff seeks treble damages for herself and the other Class members.

64. Plaintiff Alwina Fykes, on her own behalf, and on behalf of the other IDNC Class members, seeks to recover statutory damages (including treble damages for willful violation of the TCPA), as well as injunctive and equitable relief under 47 U.S.C. § 227(c)(5) against Defendants.

## THIRD CLAIM FOR RELIEF
### Violation of N.C. Gen. Stat. § 75-105 Against Defendants
### By Plaintiff, Individually, and on Behalf of the State Law DNC Class

65. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein. Plaintiff asserts this claim on behalf of herself and members of the State Law DNC Class.

66. Defendants are businesses doing business in North Carolina that, directly or through salespersons or agents, make telephone solicitations or cause telephone solicitations to be made to consumers nationwide, including in North Carolina, and are telephone solicitors under N.C. Gen. Stat. § 75-101(10).

67. Plaintiff and the other members of the State Law DNC Class subscribe to a wireless telephone company and are telephone subscribers under N.C. Gen. Stat. § 75-101(11).

68. On information and belief, Defendants and/or their agents routinely sent telemarketing text messages to residential cellular telephones in the regular course of their telemarketing campaigns alleged above. These text messages were for the purpose of encouraging the purchase of property, goods, or services from Hallelujah Acres' website, or obtaining or providing information that will or may be used for that purpose and constituted telephone solicitations under N.C. Gen. Stat. § 75-101(9).

69. Defendants have violated N.C. Gen. Stat. § 75-102(a) by sending text messages to the telephone numbers of Plaintiff and the other members of the State Law DNC Class while such telephone numbers were registered with the National Do-Not-Call Registry.

70. Defendants and/or their agents violated N.C. Gen. Stat. § 75-102(c)(1) by sending text messages which did not clearly identify the Defendants or the individual sending the text messages. Specifically, Defendants spoofed the outgoing telephone numbers used to send text messages to the State Law DNC Class.

71. Article 4 of Chapter 75 of the General Statutes creates a private right of action for injunctive relief and statutory damages for telephone subscribers who "received a telephone solicitation from or on behalf of a telephone solicitor in violation" of Article 4. N.C. Gen. Stat. § 75-105(b).

72. Defendants willfully violated N.C. Gen. Stat. § 75-102. Defendants' violations are willful because Defendants knew that they did not have consent or authority to send telemarketing text messages to Plaintiff and other State Law DNC Class members or other telephone numbers on the Do Not Call List, and Defendants nonetheless sent text messages to such telephone numbers. Because Defendants' violations were willful, Plaintiff seeks "reasonable attorneys' fees" under N.C. Gen. Stat. § 75-105(d).

73. Plaintiff Alwina Fykes, individually, and on behalf of the other members of the State Law DNC Class, seeks to recover statutory damages, as well as attorney's fees and injunctive and equitable relief under N.C. Gen. Stat. § 75-105 against Defendants.

## JURY DEMAND

The Plaintiff exercises her right to Trial by Jury on all matters.

**WHEREFORE**, Plaintiff Alwina Fykes prays that the Court enter judgment and orders in her favor and against Defendants as follows:

a. An order certifying the NDNC, IDNC, and State Law DNC Classes, directing that this case proceed as a class action, and appointing Plaintiff and her counsel to represent the classes;

b. Judgment against Defendants, and in favor of Plaintiff and the NDNC and IDNC Class members in the amount of $1,500 per violation of the TCPA as proven at trial;

c. Judgment against Defendants, and in favor of Plaintiff and the other State Law DNC Class members in an amount consistent with N.C. Gen. Stat. § 75-105(b) as proven at trial;

d. Equitable and injunctive relief, including injunctions enjoining further violations of the TCPA and N.C. Gen. Stat. § 75-102; and,

e. For such other and further relief as this Court may deem appropriate.

**COLLUM & PERRY**

**TODAY** is February 21, 2023.          By:   */s/ M. Shane Perry*
M. Shane Perry (N.C. State Bar No. 35986)
shane@collumperry.com
109 W. Statesville Ave.
Mooresville, NC 28115
Telephone: (704) 663-4187
Facsimile: (704) 663-4178

**PRESTON LAW OFFICES**

*/s/Ethan Preston*
Ethan Preston (*pro hac vice* pending)
ep@eplaw.us
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
Telephone: (972) 564-8340
Facsimile: (866) 509-1197

*Attorneys for Plaintiff Alwina Fykes, individually
and on behalf of similarly situated individuals*